IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK13-41138-TLS |
| | ) | |
| JOSEPH DAVID BRADLEY, | ) | CH. 12 |
| | ) | |
| Debtor. | ) | |

### ORDER

      Hearing was held in Lincoln, Nebraska, on July 24, 2013, on a motion to assume lease or executory contract and motion to sell free and clear of liens filed by Debtor (Fil. #8), with an objection filed by creditor Robert Whitehead (Fil. #16). Victor E. Covalt appeared for Debtor and James C. Bocott and Kenneth J. Buechler appeared for Mr. Whitehead. Evidence and briefs were submitted, and the matter was taken under advisement. This order contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(M) and (N).

      This Chapter 12 case was filed on June 11, 2013. On that same date, Debtor filed his motion to assume lease or executory contract under 11 U.S.C. § 365 and motion to sell free and clear of liens under 11 U.S.C. § 363. For the reasons discussed below, I defer ruling on the motion pending the results of a state court proceeding in Scotts Bluff County.

      There are many disputed facts between the parties. The uncontroverted facts material to this Order are as follows:

      1.      On or about April 12, 2004, Debtor, as lessee, and Mr. Whitehead, as owner, entered into a document entitled "Lease Agreement With Option To Purchase" (hereafter "Agreement"), pertaining to certain real estate containing 4,060 acres, more or less, located in Box Butte County, Nebraska, and Scotts Bluff County, Nebraska. The Agreement was recorded in both Scotts Bluff County, Nebraska, and Box Butte County, Nebraska, and a true and correct copy was attached to the motion (Fil. #8) and to Debtor's affidavit (Fil. #21), which was received into evidence. Specifically, the Agreement provides in pertinent part as follows:

>       1.      <u>Real Estate</u>. Owner leases unto Lessee, and Lessee leases from Owner, for the term and on the terms and conditions hereinafter set forth, the following described real estate:
>       [legal description omitted]
> containing 4,060 acres, more or less, together with all tenements, hereditaments, and appurtenances thereto belonging.
> . . .
>       3.      <u>Term</u>. The term of this Lease shall be deemed to have commenced on May l, 2004, and shall continue to April 30, 2029. This Lease supersedes all prior leases.

        4.      (<u>Taxes</u>) Owner shall timely pay all real estate taxes assessed against the premises, to the extent taxes exceed $5,000. Lessee shall pay all amount over $5,000.[1]

. . .

        6.      (<u>Repairs</u>) Lessee shall be responsible for all maintenance and repairs.

        7.      (<u>Failure to Pay Rental</u>) Should Lessee fail to make a payment when due hereunder, and should said default continue for a period of ten days, Owner may terminate this Lease. Lessee shall pay interest on the amount in default at the rate of 11% per annum during such default.

. . .

        9.      (<u>Termination</u>) Upon termination hereof, whether at the end of the term or otherwise, Lessee shall surrender possession of the premises in as good condition as reasonable use and ordinary wear and tear will permit, damage by any cause other than negligence of Lessee or persons on the premises by reason of Lessee's occupancy excepted.

        10.     (<u>Option To Purchase</u>) Owner grants Lessee the option to purchase the leased premises at the termination of this lease for the sum of $760,000. $20,000 of each rental payment shall apply to the purchase, with the balance of the purchase price to be paid within one year of the exercise of the option.

        To exercise the option, Lessee shall give written notice by United States Certified Mail, return receipt requested, or commercial courier service to Owner or Owner's successor at the address set forth above, or such other address as may be specified in writing after December 31, 2028 and before April 30, 2029. Closing shall occur at Lessee's lender at such time as financing is completed. Lessee should be responsible for all costs, including all real estate taxes for the year of the exercise of the option.

        11.     (<u>Benefit</u>) This Agreement shall benefit and bind the parties, their heirs, personal representatives, successors, and assigns.

     2.      On or about May 13, 2007, Debtor, as lessee, and Mr. Whitehead, as owner, entered into a document entitled "Addendum to Lease Agreement With Option To Purchase." A true and correct copy of that addendum was attached to Debtor's motion (Fil. #8) and to Debtor's affidavit (Fil. #21). Specifically, the addendum provides in pertinent part as follows:

        Pursuant to the discussions of the parties hereto, the Option granted in the aforesaid Lease Agreement With Option to Purchase is being changed.

        FOR AND. IN CONSIDERATION OF THE MUTUAL COVENANTS HEREIN CONTAINED, the parties agree as follows:

---

[1] The two sentences in this paragraph seem to require both owner and lessee to pay the taxes in excess of $5,000.00. However, the evidence indicates both parties have interpreted this provision to mean that the owner pays the taxes up to the sum of $5,000.00 while the lessee pays the taxes in excess of $5,000.00.

       1.      Change to Paragraph 10. The Option is modified to read as follows: Owner grants Lessee the option to purchase the leased premises any time after the execution of this Addendum for the sum of $760,000. $20,000 of each rental payment shall apply to the purchase with the balance of the purchase price to be paid within one year of the exercise of the option.

To exercise the option, Lessee shall give written notice by United States Certified Mail, return receipt requested, or commercial courier service to Owner or Owner's successor at the address set forth above, or such other address as may be specified in writing. Closing shall occur at Lessee's lender at such time as financing is completed, or the lender's designated closing agent. Lessee shall be responsible for all costs, including all real estate taxes for the year of the exercise of the option.

       3.[sic]  No Other Changes. All other provisions of the Lease Agreement With Option to Purchase dated April 12, 2004, are unchanged and remain in full force and effect.

       3.      On December 4, 2012, Mr. Whitehead issued a letter to Debtor asserting a variety of defaults by Debtor under the Agreement, including failure to pay rent, failure to pay real estate taxes, and improperly encumbering, subleasing and constructing improvements on the property. As a result, the letter stated "I am exercising my option to terminate the lease immediately for your failure to make a payment within 10 days after it was due." The letter also gave Debtor until December 31, 2012, to remove any personal belongings and equipment from the premises and further stated "[b]ecause I am exercising my option to terminate the lease agreement due to your default, the option to purchase is no longer valid and terminates with the remainder of the lease."

       4.      Debtor acknowledges receiving the December 4, 2012, letter, but asserts that it was received on December 17, 2012.

       5.      When Debtor failed to vacate the premises after receiving a notice to quit, Mr. Whitehead instituted a proceeding in the District Court of Scotts Bluff County, Nebraska, on April 17, 2013, seeking restitution of the premises and judgments for damages and breach of contract.

       6.      On May 8, 2013, Debtor's attorney, Terry Curtiss, executed and sent via express mail a letter to Mr. Whitehead's attorney, Joe Kishiyama (with a copy to Mr. Whitehead), stating "[t]his letter constitutes notice to you, as attorney for Robert Whitehead, that David Bradley will exercise his option to purchase the leased property from Mr. Whitehead pursuant to the terms of the Lease With Option to Purchase . . . ."

       7.      On May 14, 2013, Debtor filed his answer and demand for jury trial in the Scotts Bluff County action. Among other allegations, Debtor disputes the default, disputes the calculation of the amount due, and asserts the right to a setoff.

8. On July 23, 2013, Mr. Whitehead filed a motion for relief from stay seeking to proceed with the Scotts Bluff County action.

9. Kelly Schmaltz claims an interest in the subject property by virtue of an agreement with Debtor which was recorded in Scotts Bluff County and Box Butte County. Debtor previously sought to reject that agreement, which was granted by default. Mr. Schmaltz has filed a motion to reconsider which is not yet ripe for decision.

*Discussion*

Debtor seeks to assume either the entire Agreement or at least the purchase option contained within the Agreement, as amended. Mr. Whitehead argues that the Agreement was terminated pre-petition, and that the purchase option contained in the Agreement was terminated with it.[2] In response, Debtor disputes the validity of the termination and argues that, in any event, the purchase option is severable from the lease portion of the Agreement and can be separately assumed. Accordingly, there are two threshold issues to be decided:

1. Was the Agreement properly terminated pre-petition?

2. Is the option to purchase severable from the lease portion of the Agreement such that it can be assumed even if the Agreement has terminated?

It is easy to see why Debtor desires to assume the purchase option under the Agreement. It allows him to acquire more than 4,000 acres in Scotts Bluff County and Box Butte County for a purchase price of $760,000.00, less credits for a portion of each rental payment. Debtor has apparently entered into a contract to sell the Scotts Bluff County portion of the property to a third-party purchaser for $915,000.00. Such a transaction would enable Debtor to retain the Box Butte County property free and clear of liens while netting the difference between the sale price of the Scotts Bluff County property and the price he is required to pay for it.

If, as alleged by Debtor, the Agreement was not properly terminated by Mr. Whitehead, then the inquiry ends there. In that case, the Agreement, including the option to purchase contained therein, is undoubtedly an executory contract which is subject to assumption if I find to do so would be in the best interest of the estate. Therefore, the severability of the purchase option is an issue that may never need to be decided and, in any event, should not be decided until a determination is made as to the validity of the termination of the agreement. Federal courts "may not . . . give opinions advising what the law would be upon a hypothetical state of facts." *In re Lazy Days' RV Center, Inc.,* ___ F.3d ___, 2013 WL 3886735 at *2 (3d Cir. July 30, 2013) (quoting *Chafin v. Chafin,* __ U.S. __, 133 S. Ct. 1017, 1023, 185 L. Ed. 2d 1 (2013)).

---

[2]Others arguments were raised regarding the ability of Debtor to complete a sale under 11 U.S.C. § 363, but those issues need to be addressed only if assumption is allowed.

At the hearing, I questioned whether the validity of the termination and the severability of the purchase option were issues that should be decided in bankruptcy court or in the pending state court action in Scotts Bluff County, Nebraska. Debtor asserts that the termination issue should be decided in bankruptcy court because it is within this court's jurisdiction and is part and parcel of a debtor's right under the Bankruptcy Code to assume or reject executory contracts. Mr. Whitehead wishes to proceed with the state court action and has filed a motion for relief from stay to allow him to do so. As discussed below, I find that issue should properly be addressed in the District Court of Scotts Bluff County, Nebraska.

28 U.S.C. § 1334(c)(1) permits this court to abstain from hearing a particular matter in favor of the state courts: "[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." The issues surrounding the termination of the Agreement did not arise under title 11, but are related to a case under title 11.

In deciding whether permissive abstention under § 1334(c)(1) is appropriate under the broad statutory guidelines of the interests of justice or comity, and keeping in mind "the premise that federal courts should exercise their jurisdiction if it is properly conferred and that abstention is the exception rather than the rule,"[3] courts consider the following factors:

(1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficult or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

---

[3]*Williams v. Citifinancial Mortg. Co. (In re Williams)*, 256 B.R. 885, 894 (B.A.P. 8th Cir. 2001).

(9) the burden on the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence in the proceeding of non-debtor parties.

*Stabler v. Beyers (In re Stabler)*, 418 B.R. 764, 769 (B.A.P. 8th Cir. 2009) (citing *Williams*, 256 B.R. at 893-94 and *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) ("Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative.")).

Contrary to Debtor's assertion, the majority of these factors favor abstention. This motion was filed on the same date that the bankruptcy case was filed and, therefore, abstention would have no effect on the efficient administration of the bankruptcy case. The issue as to whether the Agreement was properly terminated is purely a state law issue that does not involve a bankruptcy issue. The only bankruptcy issue involved is whether a particular executory contract can be assumed. There must first be an executory contract. Further, if Mr. Whitehead is successful, the subject property will not even be property of the bankruptcy estate. Prior to bankruptcy filing, an action had already been commenced in state court under a special procedure which allows for an expedited ruling on the right of possession. The right of possession should necessarily decide whether the Agreement was properly terminated. That is, the only way that Mr. Whitehead would be entitled to possession of the property is if he validly terminated the Agreement. It is quite feasible to sever the state law termination issues from the "core" bankruptcy matter of assumption of an executory contract.[4] Finally, I should note that Debtor demanded a jury trial in his answer to the state court action.

For the foregoing reasons, I will abstain under 11 U.S.C. § 1334(c)(1) from hearing the issue of whether the Agreement was validly terminated. I will also grant relief from the automatic stay to Mr. Whitehead to allow him to proceed with the action in the District Court of Scotts Bluff County and any similar action he may need to file in Box Butte County in light of the property being located in both counties. However, in abstaining, I am anticipating that all issues arising from the Agreement will be resolved in one action. Therefore, to remove any doubt as to what is decided by the Scotts Bluff County action, Mr. Whitehead should seek a specific determination from the state court regarding (I) whether the Agreement was terminated, (ii) whether termination of the Agreement also

---

[4]In fact, it seems the dispute over termination of the Agreement may have to be severed even if it stayed in bankruptcy court. Arguably, it is not a core bankruptcy issue (it did not arise under title 11 or in a case under title 11), though it is related to a case under title 11. So bankruptcy court jurisdiction may be limited to hearing the matter and making proposed findings of fact and conclusions of law to the district court. *See* 28 U.S.C. § 157(c)(1).

results in termination of the purchase option; and (iii) the amount of damages, if any, due to either party under the terms of the Agreement or for breach of the Agreement. To the extent Mr. Whitehead needs to amend his complaint, he should do so. To the extent Mr. Schmaltz, or his attorney, feels it is appropriate to intervene in that state court action, he should do so.

I also recognize that the Scotts Bluff County action has second and third causes of action that appear to be based on contracts other than the Agreement and are not necessary to the determination of the issues regarding termination of the Agreement and restitution of the premises. Debtor has correctly argued that those two causes of action are nothing more than contract claims for which Mr. Whitehead can choose to file a proof of claim and need not be litigated at this time. The motion for relief from stay does not seem to seek the right to move forward with those causes of action and I agree that it is not necessary to do so at this time.

IT IS, THEREFORE, ORDERED that:

1.   The bankruptcy court will abstain from determining the issues of whether the Agreement (and the purchase option therein) was properly terminated pre-petition and any damages due as a result of the Agreement, in favor of allowing those decisions to be made by the District Court of Scotts Bluff County, Nebraska, and/or the District Court of Box Butte County, Nebraska;

2.   By separate order, relief from the automatic stay shall be granted for the parties to pursue the state court litigation pending in Scotts Bluff County, Nebraska, and any related proceeding that may be necessary or appropriate in Box Butte County, Nebraska. The relief from the automatic stay is solely for the purpose of proceeding as described above to final judgment in the state court. Mr. Whitehead may not take further action against Debtor or execute on any judgment without obtaining further relief from this court. Further, the second and third causes of action affecting contracts other than the Agreement shall remain stayed and subject to the claims allowance procedure; and

3.   The motion to assume lease or executory contract and motion to sell free and clear of liens (Fil. #8) is deferred pending the entry of final judgment in the state court action or until further order of this court. The parties shall each file status reports with this court commencing October 1, 2013, and continuing on the first day of each month thereafter.

DATE:  August 21, 2013.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Victor E. Covalt
    *James C. Bocott
    *Kenneth J. Buechler
    James A. Overcash
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.